**SHEEHAN & ASSOCIATES, P.C.**
Spencer Sheehan
505 Northern Blvd., Suite 311
Great Neck, NY 11021
Telephone: (516) 303-0552
Facsimile: (516) 234-7800
*spencer@spencersheehan.com*

   *-and-*

**REESE LLP**
Michael R. Reese
100 West 93rd Street, 16th Floor
New York, NY 10025
Telephone: (212) 643-0500
Facsimile: (212) 253-4272
*mreese@reesellp.com*

United States District Court
Southern District of New York                              1:20-cv-00151

| |
|---|
| Larrell Darby, individually and on behalf of all others similarly situated, |
| Plaintiff, |
| - against - |
| Prairie Farms Dairy, Inc., |
| Defendant |

Class Action Complaint

Plaintiff by attorneys alleges upon information and belief, except for allegations pertaining to plaintiff, which are based on personal knowledge:

1.     Prairie Farms Dairy, Inc. ("defendant") manufactures, distributes, markets, labels and sells vanilla bean  ice cream products purporting to contain flavor only from their natural characterizing flavor, vanilla under their Prairie Farms Small Batch brand ("Products").

2.     The Products are available to consumers from retail and online stores of third-parties and are sold in sizes of cartons of 1.5 Quarts.

1

3.      The Product's relevant front label representations include "Premium Vanilla Bean Ice Cream," "Small Batch," "Farmer Owned," "Prairie Farms," "Made with Local Milk & Cream," "Natural Ingredients," a cow and a scoop of the product nestled in a cone, showing specks of vanilla bean seeds and three vanilla beans.



4.      The back panel includes the Nutrition Facts, ingredient list and the statements "Gluten Free," "No High Fructose Corn Syrup" and "Natural Colors and Flavors."



I.       Vanilla is Perennial Favorite Ice Cream Flavor

5.       Ice cream is a year-round treat enjoyed by 96% of Americans.[1]

6.       Its popularity is attributed "to the perfect combination of elements – sugar, fat, frozen water, and air – that make up the mouthwatering concoction."[2]

7.       Ice cream is defined by a minimum of 10 percent milkfat, weighing no less than 4.5 pounds to the gallon and containing less than 1.4 % egg yolk solids.[3]

8.       Vanilla is the consistent number one flavor for 28% of Americans, confirmed two groups who would know – the International Dairy Foods Association (IDFA) (ice cream producers) and National Ice Cream Retailers Association (ice cream parlors).

9.       The reasons for vanilla's staying power are "not only because it is creamy and delicious, but also because of its ability to enhance so many other desserts and treats."[4]

10.      By some estimates, approximately two-thirds of "all ice cream eaten is either vanilla or vanilla with something stirred into it, like chocolate chips."[5]

11.      The applications of vanilla ice cream include its centerpiece between chocolate wafers ("sandwich"), enrobed in chocolate on a stick ("bar"), topping a warm slice of fresh-baked pie ("à la Mode"), drizzled with hot fudge, sprinkled with crushed nuts and topped by a maraschino cherry ("sundae") or dunked in a cold frothy glass of root beer ("float").[6]

A.    Philadelphia (American)-style v. French Ice Cream

12.      In the development of ice cream, the two main types were Philadelphia (American)-

---

[1] Arwa Mahdawi, The big scoop: America's favorite ice-cream flavor, revealed, The Guardian, July 11, 2018
[2] Vox Creative, The Reason You Love Ice Cream So Much Is Simple: Science, Eater.com, October 12, 2017.
[3] 21 C.F.R. § 135.110(a)(2) ("Ice cream and frozen custard.").
[4] Press Release, IDFA, Vanilla Reigns Supreme; Chocolate Flavors Dominate in Top Five Ice Cream Favorites Among Americans, July 1, 2018
[5] Bill Daley (the other one), Which vanilla ice cream is the cream of the crop? We taste test 12 top brands, Chicago Tribune, July 18, 2018
[6] The True Wonders of Vanilla Ice Cream, FrozenDessertSupplies.com.

style and French ice cream, flavored of course, with vanilla.

13.    Like many confections, ice cream was brought here from France, courtesy of two statesmen who served as ambassadors to that nation:  Thomas Jefferson and Ben Franklin.

14.    While these two Founding Fathers could agree on the terms of the Declaration of Independence and Constitution, they could not agree about the superior type of vanilla ice cream.

15.    President Thomas Jefferson was a partisan of the egg yolk base, describing this treat as "French ice cream."[7]

16.    The French reliance on egg yolks to reduce the amount of butterfat and cream used was not due to taste, but to the limited dairy production and relative abundance of hens.

17.    Dr. C. L. Alsberg, head of the Bureau of Chemistry, U.S. Department of Agriculture, highlighted the differences between these varieties in a 1914 hearing:

> the early French records, the cook books, never made ice cream from cream alone. It was not until ice cream was introduced into England that it was ever made of dairy cream sweetened and flavored and frozen. The French always used cream and eggs or cream and milk and eggs and sugar, with fruits or starches or anything that would make a custard.[8]

18.    Besides the use of eggs, another difference was "that the American ice cream is raw. And the French as a rule is cooked."[9]

19.    The egg yolk solids, when mixed with vanilla, distinguish a "French" vanilla ice cream from its Philadelphia-style counterpart by providing a: [10]

---

[7] Thomas Jefferson's Handwritten Vanilla Ice Cream Recipe, Open Culture, July 13, 2014; Thomas Jefferson's Vanilla Ice Cream, Taste of Home, June-July 2012; Thomas Jefferson's Original Vanilla Ice Cream Recipe, Jefferson Papers, Library of Congress; Anna Berkes, "Ice Cream" in Thomas Jefferson Encyclopedia, Thomas Jefferson Foundation, Inc., Monticello.org, June 28, 2013.
[8] Report of Hearing on Ice Cream Before Dr. C. L. Alsberg, Chief of the Bureau of Chemistry, U.S. Department of Agriculture, February 10, 1914 and March 7, 1914, Subject: The Use of Colloids as Stabilizes in Ice Cream, the Butter Fat Standard for Ice Cream and the Bacteriology of Ice Cream, with Special Reference to the Cincinnati Ice Cream Cases. Published by The National Association of Ice Cream Manufacturers, June 1914 at p. 19 ("Alsberg Hearings").
[9] Alsberg Hearings, Testimony of Mr. Lewis, General Manager, J. M. Horton Ice Cream Co. at p.33.
[10] The descriptor "French" or "french" preceding "vanilla" does not modify the word "vanilla."

- smoother consistency and silkier mouthfeel;

- caramelized, smoky and custard-like taste; and

- deep-yellow color.[11]

20.     Due possibly to Jefferson's efforts at popularizing this variety, ice cream with 1.4% or more egg yolk solids as part of its base is referred to as "french ice cream."[12]

21.     Meanwhile, during the sweltering summer of the Constitutional Convention of 1787, Ben Franklin's "crème froid" or "cold cream" served as a refreshing break for the delegates debating this nation's future.[13]

22.     Ever the tinkerer, Franklin adapted his ice cream to the environment by relying on the abundance of dairy farms in the Philadelphia region, the lack of hens to provide the egg yolk base and foregoing the cooking step, to more quickly produce this refreshing treat for the delegates.[14]

B.     Sources of Vanilla – Vanilla Extract and Vanilla Beans

23.     The form of vanilla used in French and Philadelphia-style ice creams also differs.

---

[11] Sheela Prakash, What's the Difference Between Vanilla and French Vanilla Ice Cream?, The Kitchn, June 7, 2017.
[12] 21 C.F.R. § 135.110(f)(1) ("The name of the food is 'ice cream'; except that when the egg yolk solids content of the food is in excess of that specified for ice cream by paragraph (a) of this section, the name of the food is 'frozen custard' or 'french ice cream' or 'french custard ice cream'.)
[13] R. Berley, A Treatise on the History of Ice Cream in Philadelphia, The Franklin Fountain; Julia Reed, Ice cream two ways: A tale of two continents, King Arthur Flour, Blog, Aug. 24, 2018; but see Jeff Keys, Ice Cream Mix-ins, N.p., Gibbs Smith (2009) at 14.
[14] Vanilla Ice Cream, Philadelphia-Style, The Perfect Scoop, Epicurious.com, Dec. 2011; Dr. Annie Marshall, Vanilla Bean Ice Cream Two Ways, and Ice Cream Basics, July 8, 2011, Everyday Annie Blog ("Varieties of ice cream generally fall into two main categories: Philadelphia-style or French-style.  Philadelphia style ice creams are quicker and simpler, with a heavy cream/milk mixture for the base.  French-style ice creams have a custard base, with cooked egg yolks to help achieve a creamy texture and rich flavor.").

Vanilla Extract        Vanilla Beans

 

24.    The French variety used vanilla extract, the liquid created when the flavor molecules from the vanilla bean are extracted by alcohol.[15]

25.    The Philadelphia-style relied on the unextracted seed pods contained inside vanilla beans which had not been subject to extraction.

26.    Vanilla beans deliver a more intense and pure flavor with strong visual appeal through the "specks" of the vanilla beans used.[16]

27.    Vanilla extract's advantages are its smoother, more even taste, ease of use, greater portability and lower price.

28.    In the best tradition of American compromise, the majority of ice cream today is

---

[15] 21 C.F.R. §§ 169.175 (Vanilla extract.) (at least thirty-five (35) percent ethyl alcohol).
[16] Lisa Weiss and Gale Gand, *Chocolate and Vanilla: A Baking Book*, United States: Potter/Ten Speed/Harmony/Rodale (2012) at 113-14; Louisa Clements, Pantry 101: Vanilla extract vs. vanilla beans, Chat Elaine, Nov. 30, 2015; David Lebovitz, The Perfect Scoop: Ice Creams, Sorbets, Granitas, and Sweet Accompaniments. United States: Potter/TenSpeed/Harmony (2011) at 26.

made in the Philadelphia-style, but flavored with vanilla extract.

II.     Vanilla is Constantly Subject to Efforts at Imitation Due to High Demand

29.     The tropical orchid of the genus Vanilla (*V. planifolia*) is the source of the prized flavor commonly known as vanilla, defined by law as "the total sapid and odorous principles extractable from one-unit weight of vanilla beans."[17]

30.     Vanilla's "desirable flavor attributes…make it one of the most common ingredients used in the global marketplace, whether as a primary flavor, as a component of another flavor, or for its desirable aroma qualities."[18]

31.     Though the Pure Food and Drugs Act of 1906 ("Pure Food Act") was enacted to "protect consumer health and prevent commercial fraud," this was but one episode in the perpetual struggle against those who have sought profit through sale of imitation and lower quality commodities, dressed up as the genuine articles.[19]

32.     It was evident that protecting consumers from fraudulent vanilla would be challenging, as E. M. Chace, Assistant Chief of the Foods Division of the U.S. Department of Agriculture's Bureau of Chemistry, noted "There is at least three times as much vanilla consumed [in the United States] as all other flavors together."[20]

33.     This demand could not be met by the natural sources of vanilla, leading manufacturers to devise clever, deceptive and dangerous methods to imitate vanilla's flavor and appearance.

---

[17] 21 C.F.R. §169.3(c).

[18] Daphna Havkin-Frenkel, F.C. Bellanger, Eds., Handbook of Vanilla Science and Technology, Wiley, 2018.

[19] Berenstein, 412; some of the earliest recorded examples of food fraud include unscrupulous Roman merchants who sweetened wine with lead.

[20] E. M. Chace, "The Manufacture of Flavoring Extracts," Yearbook of the United States Department of Agriculture 1908 (Washington, DC: Government Printing Office, 1909) pp.333–42, 333 quoted in Nadia Berenstein, "Making a global sensation: Vanilla flavor, synthetic chemistry, and the meanings of purity," History of Science 54.4 (2016): 399-424 at 399.

34.    Today, headlines tell a story of a resurgent global threat of "food fraud" – from olive oil made from cottonseeds to the horsemeat scandal in the European Union.[21]

35.    Though "food fraud" has no agreed-upon definition, its typologies encompass an ever-expanding, often overlapping range of techniques with one common goal: giving consumers less than what they bargained for.

A.    Food Fraud as Applied to Vanilla

36.    Vanilla is considered a "high-risk [for food fraud] product because of the multiple market impact factors such as natural disasters in the source regions, unstable production, wide variability of quality and value of vanilla flavorings," second only to saffron in price.[22]

37.    The efforts at imitating vanilla offers a lens to the types of food fraud regularly employed across the spectrum of valuable commodities in today's interconnected world.[23]

| Type of Food Fraud | Application to Vanilla |
| --- | --- |
| ➢ Addition of markers specifically tested for instead of natural component of vanilla beans | • Manipulation of the carbon isotope ratios to produce synthetic vanillin with similar carbon isotope composition to natural vanilla |
| ➢ Appearance of *more* and/or higher quality of the valued ingredient | • Ground vanilla beans and/or seeds to provide visual appeal as "specks" so consumer thinks the product contains real vanilla beans, when the ground beans have been exhausted of flavor |

---

[21] Jenny Eagle, 'Today's complex, fragmented, global food supply chains have led to an increase in food fraud', FoodNavigator.com, Feb. 20, 2019; M. Dourado et al., Do we really know what's in our plate?. Annals of Medicine, 51(sup1), 179-179 (May 2019); Aline Wisniewski et al., "How to tackle food fraud in official food control authorities in Germany." Journal of Consumer Protection and Food Safety: 1-10. June 11, 2019.
[22] Société Générale de Surveillance SA, ("SGS "), Authenticity Testing of Vanilla Flavors – Alignment Between Source Material, Claims and Regulation, May 2019.
[23] Kathleen Wybourn, DNV GL, Understanding Food Fraud and Mitigation Strategies, PowerPoint Presentation, Mar. 16, 2016.

- Caramel to darken the color of an imitation vanilla so it more closely resembles the hue of real vanilla[24]
- Annatto and turmeric extracts in dairy products purporting to be flavored with vanilla, which causes the color to better resemble the hue of rich, yellow butter

➢ Substitution and replacement of a high quality ingredient with alternate ingredient of lower quality

- Tonka beans, though similar in appearance to vanilla beans, are banned from entry to the United States due to fraudulent use
- Coumarin, a toxic phytochemical found in Tonka beans, added to imitation vanillas to increase vanilla flavor perception

➢ Addition of less expensive substitute ingredient to mimic flavor of more valuable component

- Synthetically produced ethyl vanillin, derived from recycled paper, tree bark or coal tar, to imitate taste of real vanilla

➢ Compounding, Diluting, Extending

- "to mix flavor materials together at a special ratio in which they [sic] compliment each other to give the desirable aroma and taste"[25]
- Combination with flavoring substances such as propenyl guaethol ("Vanitrope"), a "flavoring agent [, also] unconnected to vanilla beans or vanillin, but unmistakably producing the sensation of vanilla"[26]

---

[24] Renée Johnson, "Food fraud and economically motivated adulteration of food and food ingredients." Congressional Research Service R43358, January 10, 2014.
[25] Chee-Teck Tan, "Physical Chemistry in Flavor Products Preparation: An Overview" in Flavor Technology, ACS Symposium Series, Vol. 610 1995. 1-17.
[26] Berenstein, 423.

- "Spiking" or "fortification" of vanilla through addition of natural and artificial flavors including vanillin, which simulates vanilla taste but obtained from tree bark

➢ Addition of fillers to give the impression there is more of the product than there actually is

- Injection of vanilla beans with mercury, a poisonous substance, to raise the weight of vanilla beans, alleged in *International Flavors and Fragrances (IFF), Inc. v. Day Pitney LLP and Robert G. Rose,* 2005, Docket Number L-4486-09, Superior Court of New Jersey, Middlesex County.

- Subtle, yet deliberate misidentification and obfuscation of a product's components and qualities as they appear on the ingredient list
  - o "ground vanilla beans" gives impression it describes unexhausted vanilla beans when actually it is devoid of flavor and used for aesthetics

➢ Ingredient List Deception[27]

  - o "natural vanilla flavorings" – "-ing" as suffix referring to something *like* that which is described
  - o "Vanilla With Other Natural Flavors" – implying – wrongly – such a product has a sufficient amount of vanilla to characterize the food; often containing high amount of vanillin, which must be disclosed as an *artificial* flavor when paired with vanilla

B. <u>The Use of Vanillin to Simulate Vanilla</u>

38.     The most persistent challenger to the authenticity of real vanilla has been synthetic versions of its main flavor component, vanillin.

39.     First synthesized from non-vanilla sources by German chemists in the mid-1800s,

---

[27] Recent example of this would be "evaporated cane juice" as a more healthful sounding term to consumers to identify sugar.

vanillin was the equivalent of steroids for vanilla flavor.

40.  According to Skip Rosskam, a professor of vanilla at Penn State University and former head of the David Michael flavor house in Philadelphia, "one ounce of vanillin is equal to a full gallon of single-fold vanilla extract."[28]

41.  Today, only 1-2% of vanillin in commercial use is vanillin obtained from the vanilla plant, which means that almost all vanillin has no connection to the vanilla bean.

42.  Nevertheless, disclosure of this powerful ingredient has always been required where a product purports to be flavored with vanilla. *See* Kansas State Board of Health, Bulletin, Vol. 7, 1911, p. 168 (cautioning consumers that flavor combinations such as "vanilla and vanillin…vanilla flavor compound," etc., are not "vanilla [extract] no matter what claims, explanations or formulas are given on the label.").

43.  Since vanilla is the only flavor with its own standard of identity, its labeling is controlled not by the general flavor regulations but by the standards for vanilla ingredients.

44.  This means that if a product is represented as being characterized by vanilla yet also contains non-vanilla vanillin, the label and packaging must declare the presence of vanillin and identify it as an artificial flavor. *See* Vanilla-vanillin extract at 21 C.F.R. § 169.180(b) ("The specified name of the food is "Vanilla-vanillin extract _-fold" or "_-fold vanilla-vanillin extract", followed immediately by the statement "contains vanillin, an artificial flavor (or flavoring)".); *see also* 21 C.F.R. § 169.181(b), § 169.182(b) (similar declarations required for Vanilla-vanillin flavoring and Vanilla-vanillin powder).

45.  This prevents consumers from being misled by products which may taste similar to real vanilla and but for consumer protection requirements, would be sold at the price of real vanilla.

---

[28] Katy Severson, Imitation vs. Real Vanilla: Scientists Explain How Baking Affects Flavor, Huffington Post, May 21, 2019.

C.   "Natural Vanillins" are Produced in a Non-Natural Manner

46.    The past ten years have seen the introduction of vanillin ingredients that purport to be a "natural flavor," based on the raw material being a natural source and undergoing a natural production process.

47.    While vanillin can be made in an allegedly "natural" fermentation process from ferulic acid, the cost is prohibitive for use in most applications.

48.    When eugenol, from cloves are used to produce vanillin, it is subject to chemical reactions and processes considered to be synthetic by the FDA.

49.    These low-cost "natural vanillins" are produced by the ton in China, with little transparency or verification, before being delivered to the flavor companies for blending.

D.   Vanilla "Extenders"

50.    Modern efforts of companies to deceive the public about vanilla cannot be written without discussion of David Michael & Co., Inc., currently part of International Flavors & Fragrances.

51.    In the late 1970s, either in reacting to vanilla shortages or merely trying to boost their bottom line, David Michael developed a "natural flavor enhancer" that supposedly "contain[ed] no vanilla, vanillin, ethyl vanillin, or any artificial flavor."

52.    Instead, these flavorings were "blend[s] of dozens of plant extractives, roots, and botanicals, all natural ingredients found on the GRAS list."

53.    Dubbed "Vanguard," this ingredient was said to reduce the amount of real vanilla used by up to half.

54.    In promoting Vanguard, it was described as "flavorless" flavor substance, which in the view of that company, permitted its use in a Category 1 ice cream because vanilla extract still

provided the "characterizing flavor."

55.   On ingredient lists, a product made with Vanguard would state "vanilla extract, natural flavor."

56.   Several years later, the FDA settled the matter by rejecting the deceptive efforts of David Michael and restoring vanilla to its status as first among equals amongst the flavors.

57.   In addition to trying to game the system with "flavorless" flavors, companies attempt to add non-vanilla flavor to Category 1 ice cream but justifying their addition by claiming such flavors merely "round out" the vanilla flavor or "mask" the dairy flavors.

58.   Regardless of the method and its sophistication, the result is consumers getting less vanilla, without being told, in violation of law.

E.   Vanilla "WONF" to Imitate Real Vanilla

59.   The more recent global shortage of vanilla beans has again forced the flavor industry to "innovate[ing] natural vanilla solutions…to protect our existing customers."[29]

60.   The "flavor industry" generally refers to the largest "flavor houses" such as Symrise AG, Firmenich, Givaudan, International Flavors and Fragrances (including David Michael), Frutarom and Takasago International along with the largest food manufacturing companies such as Unilever.

61.   Their "customers" do not include the impoverished vanilla farmers who are at the mercy of these global conglomerates nor consumers, who are sold products labeled as "vanilla" for the same or higher prices than when those products contained *only* vanilla.

62.   On the surface, the flavor industry has developed schemes such as "Sustainable Vanilla Initiative" and "Rainforest Alliance Certified," its actual interests are opposed to price

---

[29] Amanda Del Buono, Ingredient Spotlight, Beverage Industry, Oct. 3, 2016.

stability in the vanilla markets.

63.    These companies benefit from high vanilla prices and use of less real vanilla because it necessitates greater use of higher margin, proprietary, "vanilla-like" flavorings made with advanced technology and synthetic biology.

64.    In fact, high profile programs such as the "Sustainable Vanilla Initiative" and "Rainforest Alliance Certified" have been silently questioned among the vanilla farmers of Madagascar.

65.    Reports have circulated that contrary to promoting "sustainability" of vanilla, these programs push the needle in the opposite direction through cash payments to farmers to destroy their vanilla crops.

66.    Under the guise of promoting crop diversification, vanilla farmers are being urged to produce the ubiquitous palm oil instead of vanilla.

67.    There have even been allegations that Unilever's Rainforest Alliance Certified Program uses child labor.

68.    Other tactics alleged to be utilized by companies such as Syrmise and Givaudan include "phantom bidding," where saboteurs claim they will pay a higher price to small producers, only to leave the farmers in the lurch, forced to sell at bottom dollar to any remaining bidders.[30]

69.    These conclusions, while not admitted, are consistent with the comments of industry executives.

70.    According to Suzanne Johnson, vice president or research at a North Carolina laboratory, "Many companies are trying to switch to natural vanilla with other natural flavors [WONF] in order to keep a high-quality taste at a lower price," known as "Vanilla WONF."

---

[30] Monte Reel, The Volatile Economics of Natural Vanilla in Madagascar, Bloomberg.com, Dec. 16, 2019.

71.     The head of "taste solutions" at Irish conglomerate Kerry, urged flavor manufacturers must "[G]et creative" and "build a compounded vanilla flavor with other natural flavors."

72.     These compounded flavors typically exist in a "black box" and "consist of as many as 100 or more flavor ingredients," including potentiators and enhancers, like maltol and piperonal, and added vanillin, blended together to enhance the vanilla, allowing the use of less vanilla to achieve the intended taste.[31]

73.     A compounded vanilla flavor "that matches the taste of pure vanilla natural extracts" can supposedly "provide the same vanilla taste expectation while requiring a smaller quantity of vanilla beans. The result is a greater consistency in pricing, availability and quality."[32]

74.     That high level executives in the flavor industry are willing to openly boast of their stratagems to give consumers less vanilla for the same price is not unexpected.

75.     This is due in part to the once powerful and respected trade group for the flavor industry, The Flavor and Extract Manufacturers Association ("FEMA"), abandoning its "self-policing" of misleading vanilla labeling claims and disbanding its Vanilla Committee.

76.     Though FEMA previously opposed efforts of industry to deceive consumers, it cast the general public to the curb in pursuit of membership dues from its largest members, such as Unilever, rumored to have been behind FEMA's abandonment of self-regulation.

III.    Ice Cream Flavor Labeling

77.     Daphna Havkin-Frenkel, editor of the *Handbook of Vanilla Science and Technology*,

---

[31] Hallagan and Drake, FEMA GRAS and U.S. Regulatory Authority: U.S. Flavor and Food Labeling Implications, Perfumer & Flavorist, Oct. 25, 2018; Charles Zapsalis et al., *Food chemistry and nutritional biochemistry*. Wiley, 1985, p. 611 (describing the flavor industry's goal to develop vanilla compound flavors "That *Seem*[s] to be Authentic or at Least Derived from a Natural Source") (emphasis added).
[32] Donna Berry, Understanding the limitations of natural flavors, BakingBusiness.com, Jan. 16, 2018.

and a leading scholar and researcher on vanilla, summarized the flavoring requirements in the context of ice cream flavored by vanilla:[33]

> There are three categories of vanilla ice cream, as defined by the FDA Standard of Identity. Vanilla ice cream Category I contains only vanilla extract. Vanilla ice cream Category II contains vanilla made up of 1 oz of synthetic vanillin per 1 gallon of 1-fold vanilla extract. Vanilla ice cream Category III contains synthetic ingredients.

78.    Carol McBride, U.S. vanilla category manager for global flavor giant Symrise, noted these requirements and their effect on consumers: "If the flavor comes partially or fully from another source, the company must stamp 'vanilla flavored' or 'artificial vanilla' on the front of the package, a likely turnoff to consumers."[34]

A.   Early Ice Cream Flavoring Debate is "Stirring"

79.    Before formal regulations were enacted, Congressional Hearings from the 1930s offered the legislature the opportunity to state their position on the non-misleading designation of flavors on ice cream products.

80.    Unsurprisingly, the starting point for the debate was how to label vanilla ice cream flavored with added vanillin from clove oil, a natural source material.

81.    Why, the industry, asked Congress, could they not label their products as "vanilla ice cream" if it contained vanillin from sources other than vanilla beans?

82.    In response, Congressmen E.A. Kenny of New Jersey and Virgil Chapman of Kentucky inquired of ice cream's representative, Mr. Schmidt:

Mr. Kenney:   Do you not think, though, Mr. Schmidt, that if you label it vanilla ice cream, it ought to be vanilla; and if it is made with vanillin extracted from oil of cloves, you ought to label it manufactured

---

[33] Daphna Havkin-Frenkel and Faith C. Belanger, eds., *Handbook of Vanilla Science and Technology*, Wiley, 2018 (221).
[34] Melody M. Bomgardner, "The problem with vanilla," Chemical & Engineering News, Sept. 12, 2016.

with such vanillin?

Mr. Schmidt: Well, we, of course, do not think so. That is why we are here making our protest. We think, after all, the consuming public is accustomed to accepting as vanilla artificial vanillas.

Mr. Kenney: *We agree that Barnum educated us along that line a long time ago.* (emphasis added)

……………

Mr. Chapman: I do think that if it is chocolate it ought to be labeled "chocolate"; and if it is flavored with vanillin made from oil of cloves, it ought to be labeled to show that it is flavored with vanillin made from oil of cloves; and if it is flavored with vanilla, it ought to be labeled "vanilla"; and if it is " flavored with lemon, it ought to be labeled "lemon "; and if it is cherry, it ought to be labeled "cherry."

83.   Later in the hearing, Mr. Chapman and another industry representative engaged over the proper declaration of flavor for ice cream:

Mr. Chapman:     Do you make raspberry?

Mr. Hibben:       Yes.

Mr. Chapman:     And you put that on the label?

Mr. Hibben:       We say "raspberry ice cream."

Mr. Chapman:     And if it is peach, you put that on the label?

Mr. Hibben:       It Is peach ice cream; yes.

Mr. Chapman:     And If you call it vanilla, what do you put on?

Mr. Hibben:       We put "vanilla ice cream" on our labels. That is what we want to continue to do. We want to put vanilla on those labels.

Mr. Chapman:     But you say you put in It oil of cloves instead of vanilla.

Mr. Hibben:       We do not use cloves. We use vanillin derived from the oil of cloves.

Mr. Chapman:     If you put out strawberry ice-cream, you would not want to use raspberry to make it, would you?

17

| Mr. Hibben: | No; but we use vanillin, which is an ingredient of the vanilla bean and, its true to name. |
| Mr. Chapman: | Is it an extract from the vanilla bean? |
| Mr. Hibben: | It is both. It is taken both from the eugenol and the vanilla bean and is the same product. If you were a chemist you could not tell the difference, and if you were a doctor, you would say that one is just as harmless as the other. |
| Mr. Chapman: | I do not object to buying artificial vanilla ice cream if it is pure, but if it is artificial. I would like to know what I am getting.[35] |

84.     Even before ice cream standards were established, Congress framed the central question for ice cream flavoring as whether the flavor source was entirely derived from the characterizing flavor – i.e., raspberry for raspberry ice cream, vanilla for vanilla ice cream.

B.   Ice Cream Flavoring Regulations

85.     The ice cream standard of identity, 21 C.F.R. § 135.110, established in the early 1960s "provided for a system for designating characterizing flavors in ice cream which has come to be referred to as the '3 category flavor labeling.'"   Exhibit "A," FDA, Taylor M. Quinn, Associate Director for Compliance, Bureau of Foods, to Glenn P. Witte, International Association of Ice Cream Manufacturers, May 31, 1979 ("Quinn Letter, May 31, 1979").

86.     The requirements "recognize[s] three distinct types of ice cream, based on the use of natural and various combinations of natural and various combinations of natural and artificial flavors that characterize this food." Exhibit "A," Quinn Letter, May 31, 1979; *see* 21 C.F.R. § 135.110(f)(2)(i)-(iii); 21 C.F.R. § 135.110(f)(3)-(5).

---

[35] One of the reasons for the emphasis on flavor derived from the characterizing flavor was ice cream's status as a high value, expensive product, made mainly from milk and cream.  The use of ersatz flavoring lowered the quality of an otherwise valued item.

**Vanilla Ice Cream Labeling Quick Chart**

| Category | Label Diagram | Flavor Source | Authority (21 C.F.R.) |
|---|---|---|---|
| I | ["characterizing flavor"] + ["ice cream"] → "Vanilla Ice Cream" or "Strawberry Ice Cream" | Vanilla Beans | §135.110(f)(2)(i) |
| II | ["characterizing flavor"] + ["flavored"] + ["ice cream"] → "Vanilla Flavored Ice Cream" or "Peach Flavored Ice Cream" | Vanilla Beans; Non-Vanilla Beans | §135.110(f)(2)(ii) |
| III | ["artificial" or "artificially flavored"] + ["characterizing flavor"] + ["ice cream"] → "Artificially Flavored Vanilla Ice Cream" or "Artificially Flavored Strawberry Ice Cream" | Vanilla Beans; Non-Vanilla Beans | §135.110(f)(2)(iii) |

87.     The key distinction between labeling flavors in ice cream compared to other foods is in the meaning of "natural flavor."

88.     In ice cream, "natural flavor" refers to flavor derived only from the characterizing flavor, while "artificial flavor" refers to flavors derived from sources other than the characterizing flavor.

89.     For a category 1 ice cream, which "contains no artificial flavor, the name on the principal display panel or panels of the label shall be accompanied by the common or usual name of the characterizing flavor, e.g., 'vanilla,' in letters not less than one-half the height of the letters used in the words 'ice cream.'" 21 C.F.R. §135.110(f)(2)(i); *see* Quinn Letter, May 31, 1979 ("the designation of a characterizing flavor for category I ice cream is based on the premise that only natural flavor derived from the product whose flavor is simulated may be used.").

90.     Categories 2 and 3 may contain a natural characterizing flavor and artificial flavor simulating it, but differ based on whether the natural characterizing flavor predominates. *See* 21 C.F.R. §135.110(f)(2)(ii) ("Category II") ("If the food contains both a natural characterizing flavor

and an artificial flavor simulating it, and if the natural flavor predominates"); 21 C.F.R.
§135.110(f)(2)(iii) ("Category 3") ("If the food contains both a natural characterizing flavor and
an artificial flavor simulating it, and if the artificial flavor predominates"); Exhibit "A," Quinn
Letter, May 31, 1979 ("The flavor designation for category II ice cream is on the basis that the
product contains both natural and artificial flavor, but the natural flavor predominates, whereas in
category III the artificial flavor predominates.").

91.    The non-vanilla flavor which simulates the natural characterizing vanilla flavor is
deemed to predominate when "the amount of vanillin used is greater than 1 ounce per unit of
vanilla constituent." *See* 21 C.F.R. §135.110(f)(5)(i); Exhibit "B," FDA, R.E. Newberry, Assistant
to the Director, Division of Regulatory Guidance, Bureau of Foods, to Daniel P. Thompson,
October 30, 1979 ("Newberry Letter, October 30, 1979") (a non-vanilla flavor "is deemed to
simulate [resemble or reinforce] vanilla if the addition of the non-vanilla flavor results in a
reduction in the amount of vanilla bean derived flavor that would otherwise be used in a vanilla
flavored ice cream…such a product would come under category III and have to be labeled as
'artificial vanilla.'").

92.    The requirements – and resulting consumer expectations for almost fifty years – are
clear: "the flavor agent for vanilla ice cream (a category I product) is limited to vanilla bean and/or
flavor derived from vanilla beans." Exhibit "A," Quinn Letter, May 31, 1979; *see also* Exhibit
"C," Summers Letter, April 10, 1979 ("A product identified as 'Vanilla Ice Cream' is subject to
the category 1 ice cream requirements and, therefore, must contain only the characterizing flavor
derived from vanilla beans," "the standard for ice cream does not provide for the label designation
of "With other [natural] flavors" (WONF).").

IV.    Flavoring Regulations for Ice Cream are Distinct from Other Foods

93.    The flavor regulations for ice creams are separate from the general flavor regulations for other foods. *Compare* 21 C.F.R. § 135.110(f)(2)-(5) with 21 C.F.R. § 101.22; Exhibit "A," Quinn Letter, May 31, 1979 ("The general flavor regulations are not applicable to this standardized food.").

94.    The ice cream flavor designations were "established long before the development of the general flavor regulations published under 21 CFR 101.22." Exhibit "C," FDA, J.L. Summers, Assistant to the Director, Division of Regulatory Guidance, Bureau of Foods, April 10, 1979 to David B. Daugherty  ("Summers Letter, April 10, 1979") ("Consequently, the labeling requirements for the declaration of flavors in the name of ice cream are specifically provided for by the standard and is separate and apart from the general flavor regulations.").[36]

95.    Under 21 C.F.R. § 101.22(a)(3), "natural flavor" is defined generally as "the essential oil, oleoresin, essence or extractive…which contains the flavoring constituents" from a natural source such as plant material and can refer to combinations of natural flavors.

96.    "Artificial flavor" in contrast is any substance whose function is to impart flavor that is not derived from a natural source.  *See* 21 C.F.R. § 101.22(a)(1).

97.    For the purposes of designating the type of ice cream on the front label, whether a flavor complies with the general definition of natural flavor in other regulations has no relevance. Exhibit "C," Summers Letter, April 10, 1979 ("A product identified as 'Vanilla Ice Cream' is subject to the category I ice cream requirements and, therefore, must contain only the characterizing flavor derived from vanilla beans."); Exhibit "A," Quinn Letter, May 31, 1979 ("It is our understanding that there are available in the market place, natural flavoring compounds that

---

[36] Compare 21 C.F.R. § 135.110(f)(2)-(5) with 21 C.F.R. § 101.22.

resemble, simulate and/or enhance vanilla flavor but are not derived from vanilla bean.  These flavor compounds would not comply with the intent of the flavor provisions of Category I ice cream").

98.    This is because 21 C.F.R. § 135.110(f) "makes no provision for any natural flavors other than natural characterizing flavors."  Exhibit "D," Joseph Hile, Associate Commissioner for Regulatory Affairs, February 9, 1983, Formal Advisory Opinion at p. 9 ("Hile Letter, February 9, 1983") ("FDA must treat all natural flavors that simulate the characterizing flavor as artificial flavors when deciding what name should appear on the principal display panel").[37]

99.    At best, "[N]atural flavors not derived from vanilla beans may be used in combination with the standardized items included under 21 CFR 169 (vanilla-vanillin extract or vanilla-vanillin flavoring) for category II vanilla flavored ice cream provided that the flavoring contributed by or derived from the vanilla beans predominates" and they are fully disclosed as same.  Exhibit "E," FDA, Quinn to Kenneth Basa, August 22, 1979 ("Quinn Letter, August 22, 1979").

V.  The Products are Misleading Because they Contain Non-Vanilla Flavor and/or Components

100.  The front label statements of "Vanilla Bean Ice Cream" and "Vanilla Bean" are understood by consumers to identify a product where (1) vanilla is the characterizing flavor, (2) vanilla is contained in a sufficient amount to flavor the product, (3) the flavor is derived from vanilla extract or vanilla flavoring and unexhausted vanilla beans, (4) no other flavors simulate, resemble, reinforce, or enhance flavoring from vanilla or permit less real vanilla to be used and (5) vanilla is the exclusive source of flavor.

---

[37] 21 C.F.R. § 135.110(f) was previously 21 C.F.R. § 135.110(e).

A. Ingredient List Declaration of "Natural Flavor" Reveals Flavor is Not Exclusively Vanilla

101.   The ingredient list reveals the Product's flavoring ingredient is "Natural Flavor."

Ingredient List

**INGREDIENTS:** CREAM, MILK, SUGAR, SKIM MILK, WHEY, STABILIZER (MONO AND DIGLYCERIDES, GUAR GUM, CELLULOSE GUM AND CARRAGEENAN), NATURAL FLAVOR, VANILLA BEAN.

102.   Where a product is labeled as a type of, or containing, vanilla ice cream, without any or adequate qualification, but the ingredient list identifies "natural flavor" in lieu of an exclusively vanilla flavoring ingredient such as vanilla extract, it means (1) the flavoring is not exclusively from vanilla, (2) the non-vanilla flavor may contain vanillin, not disclosed as an artificial flavor when paired with vanilla, (3) the non-vanilla flavors simulate, resemble and reinforce the vanilla flavor and (4) the non-vanilla flavors allow the use of less real vanilla.

103.   Had the Products flavoring derived exclusively from vanilla, the ingredient list would declare the common or usual names of one or more of the exclusively vanilla ingredients, viz, Vanilla Extract, Concentrated Vanilla Extract, Vanilla Flavoring and Concentrated Vanilla Flavoring, and not declare any other flavor ingredient. *See* 21 C.F.R. §§ 169.175 to 169.178.

104.   The exclusively vanilla ingredients – vanilla extract, vanilla flavoring, etc. – differ only in that the former is at least thirty-five (35) percent ethyl alcohol while the latter is less than this amount. *See* 21 C.F.R. §§ 169.175 (Vanilla extract.), 169.177 (Vanilla flavoring.); also

concentrated versions of each of these.

105.  Because ice cream is a standardized food and the vanilla ingredients are subject to their own standards of identity, the designation of these vanilla ingredients is controlled by 21 U.S.C. §343(g) – they are required to be specifically declared:[38]

> A food shall be deemed to be misbranded –
>
> (g) Representation as to definition and standard of identity
>
> If it purports to be or is represented as a food for which a definition and standard of identity has been prescribed by regulations as provided by section 341 of this title, unless (1) it conforms to such definition and standard, and (2) its label bears the name of the food specified in the definition and standard, and, insofar as may be required by such regulations, the common names of optional ingredients (other than spices, flavoring, and coloring) present in such food.

B.  "Natural Flavor" as Declared on Ingredient List in Accordance with 21 C.F.R. § 101.22 ≠ Vanilla Extract or Vanilla Flavoring

106.  "Natural Flavor" is permitted as a designation for a flavor ingredient because (1) multiple flavors are often combined with flavor enhancers (adjuvants) without a standard, concise way to declare such a blend and (2) the term "natural flavor" allows protection of trade secrets because identifying each component of a flavor ingredient would disclose that information to competitors.

107.  "Natural Flavor" on the Product's ingredient list does not refer to an exclusively vanilla ingredient, because if it did, it would be declared.

108.  Companies know consumers would prefer to see vanilla extract or vanilla flavoring on an ingredient list instead of "natural flavor" for multiple reasons.

109.  First, vanilla extract and vanilla flavor(ing) are high value ingredients which appeal to consumers.

---

[38] 21 U.S.C. § 343(g)(2) read with 21 C.F.R. § 135.110(f)(2)(i) and 21 C.F.R. §§ 169.175 – 169.178.

110.   Second, consumers prefer to see vanilla extract or vanilla flavoring on an ingredient list because "natural flavor" is a technical, non-transparent term which allows its components to be kept secret.

111.   Third, the ubiquity of "natural flavor" – in almost every food and beverage available – is synonymous with a laboratory-created, mass produced, low value ingredient.

112.   Fourth, because all ingredients are required to be declared by their common or usual name, the common or usual name for the exclusively vanilla ingredients is not natural flavor. *See* 21 C.F.R. § 101.4(a)(1).

C.   "Natural Flavor" in Context of Vanilla Ice Cream

113.   Where the front label of an ice cream product represents it is flavored only from the characterizing vanilla flavor, it is deceptive and unlawful to include flavor not derived from vanilla beans.[39]

114.   Where a product labeled as a type of, or containing, vanilla ice cream, contains "natural flavor" as the only flavoring ingredient on the ingredient list, it refers to an ingredient known in the trade as "Vanilla With Other Natural Flavors" or "Vanilla WONF."

115.   According to those knowledgeable about the flavor industry, there are generally two types of Vanilla WONF.

116.   One type contains some real vanilla but contains high amounts of "natural vanillin."

117.   Labeling such an ingredient "Natural Flavor" is contrary to law because vanillin has always been an artificial flavor when used with vanilla, regardless of whether it is made through a "natural process."

118.   The other type contains some real vanilla and either will contain flavor "enhancers"

---

[39] 21 C.F.R. § 135.110(f)(2)(i).

like piperonal, maltol and ethyl maltol or consist of a formula similar to the "flavorless" Vanguard vanilla extender, *supra*.

119.   Companies which sell and use these kinds of Vanilla WONF justify the deception by claiming the non-vanilla flavors (1) "round out" the vanilla or ancillary flavors, (2) "mask" dairy flavors and (3) provide no flavor (Vanguard).

120.   In either type of Vanilla WONF, non-vanilla flavorings and compounds are used so consumers will think a product has more real vanilla than it actually does and expect all of the vanilla taste to be from vanilla.

VI.    Misleading Use and/or Description of (Ground) Vanilla Beans

121.   Vanilla beans are the source of vanilla flavor, which is obtained through extraction with ethyl alcohol.

122.   After all flavor has been extracted from vanilla beans, the exhausted or spent beans are typically discarded as a waste product, as they contain no nutritive or flavoring value.

123.   However, manufacturers and suppliers have devised multiple methods to re-use the spent beans.

124.   The first method involves a drying, chopping and sining process before being added to a product "strictly in a cosmetic manner, as they are flavorless."[40]

125.   The second method involves infusing the exhausted beans with synthetic vanillin and other flavoring substances prior to being incorporated into food.

126.   This tactic gives non-vanilla flavor to the spent beans, but unbeknownst to consumers, it is not "real vanilla" flavor, as that had already been extracted.

127.   Several reasons support the conclusion that where a product name includes "vanilla

---

[40] Chat Nielsen, Jr., The Story of Vanilla, p. 15.

bean" and the ingredient list contains "ground vanilla beans," "vanilla bean(s)," "vanilla bean seeds," "vanilla specs" or "vanilla flecks" on the ingredient list, these are exhausted or spent vanilla beans.

128.  First, in mass produced products, the inclusion of ground vanilla beans would result in inconsistent flavoring from batch to batch.

129.  Second, the use of ground vanilla beans not devoid of flavor requires unique equipment and processes.

130.  Only a handful of lower volume, regional companies, such as Graeters of Ohio, possess such capabilities.

131.  Third, the global scarcity of vanilla beans means that almost all beans are used for vanilla extract, which has significantly more uses and is easier to sell.

132.  Fourth, the imbalance in use of real vanilla compared to demand for exhausted seeds support the conclusion that spent seeds are being used to give the appearance of *more* vanilla when the products are providing *less* vanilla.

133.  Established supplier Cook's Vanilla noted the "inordinate increase in demand for seeds, even while demand for pure vanilla extract has dropped," reporting that over the last two years, companies have requested:

> thousands of pounds of vanilla bean seeds accompanying much smaller orders for blended (Category II) vanillas made from both artificial and pure extract.

> The mismatch between demand for vanilla seeds and vanilla extract makes it impossible to supply enough seeds. Since the seeds are a small by-product of vanilla extract, and we cannot obtain them unless we buy (extremely expensive) whole vanilla bean pods and make (extremely expensive) pure vanilla extract from them.

> Even the cheapest, lowest-grade vanilla bean pods cost more that $100 per pound. So it unequivocally makes no sense to purchase vanilla bean pods for the sole purpose of getting their seeds.

Which means that some of the seeds you see are not vanilla bean seeds at all. Just as with pure vanilla extract, we suspect significant adulteration of exhausted vanilla bean seeds in the industry.[41]

134.  Aust & Hachman, a vanilla importer in Montreal also observed that "demand for exhausted or spent vanilla, (vanilla waste after extraction), and vanilla seeds sifted from this material has exploded over the last 12 months" because the amount of actual vanilla has been at low levels, in part due to climactic conditions.[42]

135.  Fifth, the inclusion of vanilla bean specs allows a company to include the word "vanilla" ingredient on the ingredient list, which technically cannot be done when any vanilla is a component of the "Natural Flavor."

136.  If a company is not willing to give consumers real vanilla extract or vanilla flavoring by themselves, without added flavor enhancers and non-vanilla flavors, it is implausible they will include the higher priced unexhausted vanilla beans.

| Front Label Image | Vanilla Bean Specks |
| --- | --- |




---

[41] Cook's Blog, Vanilla Bean Seeds: A Troubling New Trend, June 13, 2019.
[42] Aust & Hachman Canada, May 2019 Update.

VIII.    Products are Misleading Because They are Labeled and Named Similar to Other Products

137.   Competitor ice cream products are labeled as or containing vanilla beans, and are not misleading because they contain non-exhausted vanilla beans.

A.   Vanilla Bean Ice Cream Product of Competitor and Defendant

138.   The following are Vanilla Bean Ice Cream products of defendant and a competitor.

| Competitor Product | Product |
|---|---|
| Madagascar Vanilla Bean Ice Cream | Vanilla Bean Ice Cream |





**INGREDIENTS:** CREAM, MILK, CANE SUGAR, SKIM MILK, EGGS, VANILLA BEAN, VANILLA EXTRACT, CAROB BEAN GUM, GUAR GUM.

**INGREDIENTS:** CREAM, MILK, SUGAR, SKIM MILK, WHEY, STABILIZER (MONO AND DIGLYCERIDES, GUAR GUM, CELLULOSE GUM AND CARRAGEENAN), NATURAL FLAVOR, VANILLA BEAN.

139.  The competitor product identifies "Vanilla Bean" and "Vanilla Extract," and the listing of vanilla bean is truthful and non-misleading because the manufacturer has disclosed its unique specialized methods for including non-exhausted vanilla beans.

140.  Defendant's Product lists "Natural Flavor" and the "Vanilla Bean," based on spectrographic and other analytical methods which were or may be used, consists of spent vanilla bean seeds.

IX.    Conclusion

141.  The proportion of the characterizing components, vanilla and vanilla beans, have a material bearing on price or consumer acceptance of the Products because they are more expensive and desired by consumers.

142.  The Products are misleading because they do not contain the amount, type and percentage of vanilla and vanilla beans as a component of the flavoring in the ice cream, which is required and consistent with consumer expectations.

143.  Had plaintiff and class members known the truth, they would not have bought the Product or would have paid less for it.

144.  The Product contains other representations which are misleading and deceptive.

145.  As a result of the false and misleading labeling, the Product is sold at a premium price, approximately no less than $6.99 per 1.5 Quarts (1.41 L), excluding tax – compared to other similar products represented in a non-misleading way.

Jurisdiction and Venue

146.  Jurisdiction is proper pursuant to 28 U.S.C. § 1332(d)(2) (Class Action Fairness Act of 2005 or "CAFA").

147.  Under CAFA, district courts have "original federal jurisdiction over class actions

involving (1) an aggregate amount in controversy of at least $5,000,000; and (2) minimal diversity[.]" *Gold v. New York Life Ins. Co.*, 730 F.3d 137, 141 (2d Cir. 2013).

148.   Upon information and belief, the aggregate amount in controversy is more than $5,000,000.00, exclusive of interests and costs.

149.   This is a reasonable assumption because defendant's Products are sold in thousands of stores across the nation and have been sold bearing the allegedly misleading claims for several years.

150.   Plaintiff Larrell Darby is a citizen of New York.

151.   Defendant Prairie Farms Dairy, Inc. is a Illinois corporation with a principal place of business in Edwardsville, Madison County, Illinois and is a citizen of Illinois

152.   This court has personal jurisdiction over defendants because it conducts and transacts business, contracts to provide and/or supply and provides and/or supplies services and/or goods within New York.

153.   Venue is proper because plaintiff and many class members reside in this District and defendant does business in this District and State.

154.   A substantial part of events and omissions giving rise to the claims occurred in this District.

### Parties

155.   Plaintiff Larrell Darby is a citizen of Bronx, Bronx County, New York who purchased the Product during the statutes of limitations for the causes of action alleged.

156.   Defendant Prairie Farms Dairy, Inc. is a Illinois corporation – specifically, an agricultural cooperative – with a principal place of business in Edwardsville, Illinois, Madison County.

### Class Allegations

157.   The classes will consist of all consumers in New York, the other 49 states and a nationwide class where applicable.

158.   Common questions of law or fact predominate and include whether defendant's representations and practices were likely to harm plaintiff and if plaintiff and class members are entitled to damages.

159.   Plaintiff's claims and basis for relief are typical to other members because all were subjected to the same unfair and deceptive actions.

160.   Plaintiff is an adequate representative because her interests do not conflict with other members.

161.   No individual inquiry is necessary since the focus is only on defendant's practices and the class is definable and ascertainable.

162.   Individual actions would risk inconsistent results, be repetitive and are impractical to justify, as the claims are modest relative to the scope of the harm.

163.   Plaintiff's counsel is competent and experienced in complex class action litigation and intends to adequately and fairly protect class members' interests.

164.   Plaintiff seeks class-wide injunctive relief because the practices continue.

<u>New York GBL §§ 349 & 350</u>
<u>(Consumer Protection from Deceptive Acts)</u>

165.   Plaintiff incorporates by reference all preceding paragraphs.

166.   Plaintiff and class members desired to purchase products which were as described by defendant and expected by reasonable consumers, given the product type.

167.   Defendant's acts and omissions are not unique to the parties and have a broader impact on the public.

168.   Defendant's conduct was misleading, deceptive, unlawful, fraudulent, and unfair

because it gives the impression to consumers the Products contain sufficient amounts of the highlighted ingredient, vanilla, to characterize the taste or flavor of the Products, only contain said ingredient to flavor the Product and contained non-exhausted vanilla beans.

169.  Plaintiff and class members relied on the representations and paid more for the Products as a result of what defendant stated about the Products.

170.  Plaintiff  and class members would not have purchased the Products or paid as much if the true facts had been known, suffering damages.

<u>Negligent Misrepresentation</u>

171.  Plaintiff incorporates by reference all preceding paragraphs.

172.  Defendant misrepresented the substantive, quality, compositional, organoleptic and/or nutritional attributes of the Products through representing they contained sufficient amounts of the highlighted ingredient, vanilla, to characterize the taste or flavor of the Products, only were flavored by vanilla and contained non-exhausted vanilla beans.

173.  Defendant had a duty to disclose and/or provide non-deceptive labeling of the Product and its components and ingredients, and knew or should have known same were false or misleading.

174.  This duty is based on defendant's position as an entity which has held itself out as having special knowledge and experience in the production, service and/or sale of the product or service type.

175.  The representations took advantage of consumers' (1) cognitive shortcuts made at the point-of-sale and (2) trust placed in defendant, a well-known and respected brand in this sector.

176.  Plaintiff and class members reasonably and justifiably relied on these negligent misrepresentations and omissions, which served to induce and did induce, the purchase of the

Products.

177.  Plaintiff  and class members would not have purchased the Products or paid as much if the true facts had been known, suffering damages.

<u>Breaches of Express Warranty, Implied Warranty of Merchantability and
Magnuson Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq.*</u>

178.  Plaintiff incorporates by reference all preceding paragraphs.

179.  Defendant manufactures and sells products which purport to contain sufficient amounts of the highlighted ingredient, vanilla, to characterize the taste or flavor of the Products, only contained the highlighted ingredient to flavor the Product, and contained non-exhausted vanilla beans, which are desired by consumers.

180.  The Products warranted to Plaintiff and class members that they possessed substantive, functional, nutritional, qualitative, compositional, organoleptic, sensory, physical and other attributes which they did not.

181.  Defendant had a duty to disclose and/or provide a non-deceptive description and identification of the Products.

182.  This duty is based, in part, on defendant's position as one of the most recognized companies in the nation in this sector.

183.  Plaintiff provided or will provide notice to defendant, its agents, representatives, retailers and their employees.

184.  Defendant had received or should have been aware of the misrepresentations due to numerous complaints by consumers to its main office over the past several years.

185.  The Products did not conform to their affirmations of fact and promises due to defendant's actions and were not merchantable.

186.  Plaintiff and class members relied on defendant's claims, paying more than they

would have.

<u>Fraud</u>

187.  Plaintiff incorporates by references all preceding paragraphs.

188.  Defendant's purpose was to sell a product which purported to contain sufficient amounts of the highlighted ingredient, vanilla, to characterize the taste or flavor of the Products, only contained flavor from vanilla and had non-exhausted vanilla beans.

189.  Defendant's fraudulent intent is evinced by its failure to accurately identify the Product on the front label.

190.  Plaintiff and class members observed and relied on defendant's claims, causing them to pay more than they would have, entitling them to damages.

<u>Unjust Enrichment</u>

191.  Plaintiff incorporates by reference all preceding paragraphs.

192.  Defendant obtained benefits and monies because the Products were not as represented and expected, to the detriment and impoverishment of Plaintiff and class members, who seek restitution and disgorgement of inequitably obtained profits.

<u>Jury Demand and Prayer for Relief</u>

Plaintiff demands a jury trial on all issues.

  **WHEREFORE**, Plaintiff prays for judgment:

1.  Declaring this a proper class action, certifying Plaintiff as representative and undersigned as counsel for the class;

2.  Entering preliminary and permanent injunctive relief by directing defendant to correct the challenged practices to comply with the law;

3.  Injunctive relief to remove, correct and/or refrain from the challenged practices and

representations, restitution and disgorgement for members of the State Subclasses pursuant

to the applicable laws of their States;

4.   Awarding monetary damages and interest, including treble and punitive damages, pursuant

to the common law and other statutory claims;

5.   Awarding costs and expenses, including reasonable fees for plaintiff's attorneys and

experts; and

6.   Other and further relief as the Court deems just and proper.

Dated:   January 7, 2020

Respectfully submitted,

Sheehan & Associates, P.C.
/s/Spencer Sheehan
Spencer Sheehan
505 Northern Blvd., Suite 311
Great Neck, NY 11021
Telephone: (516) 303-0552
Facsimile: (516) 234-7800
*spencer@spencersheehan.com*
E.D.N.Y. # SS-8533
S.D.N.Y. # SS-2056

*-and-*

Reese LLP
Michael R. Reese
100 West 93rd Street, 16th Floor
New York, NY 10025
Telephone: (212) 643-0500
Facsimile: (212) 253-4272
mreese@reesellp.com

1:20-cv-00151
United States District Court
Southern District of New York

Larrell Darby, individually and on behalf of all others similarly situated,

Plaintiff,

- against -

Prairie Farms Dairy, Inc.,

Defendant

## Class Action Complaint

```
Sheehan & Associates, P.C.
 505 Northern Blvd., #311
   Great Neck, NY 11021
   Tel: (516) 303-0552
   Fax: (516) 234-7800
```

Pursuant to 22 NYCRR 130-1.1, the undersigned, an attorney admitted to practice in the courts of New York State, certifies that, upon information, and belief, formed after an inquiry reasonable under the circumstances, the contentions contained in the annexed documents are not frivolous.

Dated:  January 7, 2020

/s/ Spencer Sheehan
Spencer Sheehan
